DRAKE, Ch. J.,
dissenting:
I do not concur in the conclusion reached by the majority of the court, and will briefly state my views of the case.
By the Act March 3, 1869, the Eastern Division company was required to extend its railroad to a connection at Denver with the proposed road of the claimant from Denver to Cheyenne, so as to make a continuous line of railroad from Kansas City, via Denver, to Cheyenne.
To effectuate this object, the Eastern Division company was by that act authorized to contract, and did contract, with the claimant to adopt the claimant’s road-bed, already graded between Denver and Cheyenne, as its line between those points, and to transfer to the claimant “all the rights and privileges, [of the Eastern Division company in,] subject to all the obligations, [>>f that company,] pertaining to said part of its line.”
As a part of this arrangement, and under the authority of the third section of that act, the claimant received the alternate sections of public lauds along the line of its road, to which the Eastern Division company would have been entitled if it had built that part of the road.
Beyond doubt, then, the claimant, by its own agreement, occinpies now, as to the Government, the exact position which the Eastern Division company would now occupy if it had itself built the road from Denver to Cheyenne. In return for the acquirement of all the rights and privileges of that company in the road between those points, the claimant assumed all the obligations of that company pertaining thereto. The sole change authorized by and made under that act was in the party which should enjoy those rights and privileges and assume those obligations.
As the rights and privileges are not involved in this suit, we *264 need only inquire into tlie nature and extent of the obligations which the claimant assumed. To determine this, it is only necessary to ascertain what would have been the obligations • of the Eastern Division company if it had constructed the whole line from Kansas City, via Denver, to Cheyenne. This is done by reference to the previous acts above set forth.
By the act of 1862 the Eastern Division company (then called the Leavenworth, Pawnee and Western Railroad Company) was authorized to construct a railroad from the mout of the Kansas River to the initial point of the Union Pacific Railroad, “upon the same terms and conditions in all respects as are provided in this act for the qonstruetion,” of the Union Pacific Railroad.
Among the terms and conditions imposed by that act, primarily upon the Union Pacific Railroad Company, and secondarily but equally upon the Eastern Division company, were the following: First. That the company should pay at maturity the bonds of the Government issued to it in aid of the construction of its road. Second. That the company should keep its railroad and telegraph-line in repair and use. Third. Should at all times trausmit dispatches over said telegraph-line, and transport mails, troops, and munitions of war, supplies, and public stores, upon said railroad for the Government whenever required to do so by any department thereof. Fourth. That the Government should at all times have the preference in the use of the telegraph-line and railroad for all the purposes aforesaid, at fair and reasonable rates of compensation, not to exceed the amounts paid by private parties for the same kind of service. Fifth. That all compensation for services rendered for the Government should be applied to the payment of said bonds and interest until the whole amount should be fully paid.
Such were the terms upon which the Government made to the Eastern Division company the grants specified in the act of 1862; and those grants were declared to be made “ upon condition ” that the company should do the things specified in the five particulars just stated. When the Eastern Division company accepted those grants, it accepted also the obligation to do those things. It is no more possible to separate the grants from the obligations than it would be to impose the obligations without an acceptance of the grants.
Ko one of those obligations has beeu released by the Gov *265 ernment, nor lias the Government modified any of them, except in one particular, namely, that it no longer requires the whole compensation earned by the company for services to the Government to be applied to the payment of said bonds and interest, but only one-half thereof.
So, if the Eastern Division company had proceeded, under the act of 1862, to construct its road from the mouth of the Kansas Eiver to the initial point of the Union Pacific Eailroad, it would have done so subject to those obligations.
By the Act July 2, 1864, that company was authorized to adopt a new route, and to construct its road so as to connect with the Union Pacific Eailroad at a point westwardly of the initial point of the latter; but that authority was expressly declared to be “ subject to all the conditions and restrictions of this act.” What act? Why, as the act of 1864 is amendatory of that of 1862, and therefore a part of it, and the two are to be taken and construed together as the same act, the words this act ” must be held to mean the act of 1862, as amended by that of 1864. And so the amended act affirmed and re-imposed upon the Eastern Division company the above “ conditions.”
With its legal obligations thus defined, the Eastern Division company proceeded to construct its road on its new route. Had it built the whole line from Kansas City, via Denver, to Cheyenne, it cannot be doubted that that whole line would have been subject to the terms and .conditions aforesaid. If so, then the part of the line between Denver and Cheyenne, built by claimant, became, by the act of 1869, just as much subject thereto; not by arbitrary legal imposition, but by express agreement between the claimant, the Government, and the Eastern Division company. Any other view makes wholly nugatory the provisions of the acts of 1862, 1864, and 1869, imposing the terms and conditions aforesaid.
Against this view it is urged that it makes the claimant and its road liable for the bonds issued to the Eastern Division company for the 393‡|- miles on account of which those bonds were issued. Perhaps so, perhaps not; but if so, why not ? The act of 1869 did not compel or require the claimant to enter into the arrangement therein specified, but only authorized it. Kor did it impose upon the claimant against its will a liability for the obligations of another company, but merely authorized it to make a contract, the clear and inevitable result of which *266 was to subject it to certain existing statutory obligations. The claimant availed itself of that authority, and entered into the contract with full opportunity to know, and, in fact, well knowing what it was doing. It is too late now for it to avoid the obligations it assumed in becoming a party to that contract.
If it desires to be released from them, the very least it ought injustice and equity to do is to give back to the Government the lands granted by the Government to it, and without which, it may be, the claimant’s road would not have been built. At any rate, the terms of the laws governing the case include and bind the claimant, and this court has no authority to release the claimant from the obligations of its own acts under those laws.
In my judgment the claimant is entitled to recover only one-half of the- sum sued for, and the defendants are entitled to withhold the otber half for the purpose expressed in the act of 1862. If the Eastern Division company, now the Kansas Pacific Railroad Company, should hereafter pay the principal and interest of the bonds issued to it, then the withheld one-half of the compensation earned by the claimant would be lawfully claimable by and doubtless would be paid to it.
Peck, J., was absent when this case was argued, and took no part in the decision.